[No. 29078-2-II. Division Two. January 21, 2004.]

JOSEPH CASPER, ET AL., *Respondents*, v. ESTEB ENTERPRISES, INC., ET AL., *Appellants*.

*Michael B. King* and *June A. Jackson* (of *Lane Powell Spears Lubersky, L.L.P.*) and *Gary A. Boe* and *James W. Talbot* (of *O'Brien Hutson & Boe*), for appellants.

*Howard M. Goodfriend* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*) and *John J. Dunbar*, for respondents.

ARMSTRONG, J. — Esteb Enterprises, Inc., appeals a $290,067 jury verdict in favor of Joe and Amy Casper on their breach of contract claim arising out of numerous defects in the custom home Jerry Esteb partially built for them. Esteb argues that the trial court improperly bound him to his CR 30(b)(6) deposition testimony on behalf of Esteb Enterprises, Inc., and that the trial court unconstitutionally commented on the evidence when it enforced its orders at trial. The Caspers cross-appeal, contending they are entitled to judgment as a matter of law on their Consumer Protection Act, chapter 19.86 RCW, claim. Be-

cause the decision to bind Esteb to his CR 30(b)(6) testimony was a discovery sanction within the trial court's discretion and because the judge's trial statements were necessary to enforce the sanction, we find no reversible error. We also reject the Caspers' claim to a Consumer Protection Act judgment as a matter of law because the evidence, when viewed favorably to Esteb, supports the jury's verdict.

## FACTS

### I. Background

Joe and Amy Casper and Jerry Esteb, the principal of Esteb Enterprises, Inc. (EEI), contracted for construction of a custom home in Washougal, Washington.[1] The parties blame each other for most of the home's many serious construction defects that gave rise to the lawsuit. But the issues on appeal concern the trial judge's discovery rulings, the manner in which he enforced those rulings at trial, and his denial of the Caspers' motion for a judgment as a matter of law on their Consumer Protection Act (CPA) claim.

### II. Discovery

On April 30, 2002, the Caspers deposed EEI under CR 30(b)(6). Jerry Esteb testified for EEI. Esteb provided a balance sheet of the corporation dated April 29, 2002, but he did not extensively prepare for this deposition. Esteb testified that he had not seen the deposition notices.

In their deposition notice, the Caspers designated a number of topics for inquiry, including the amount of EEI's profit on the Casper project and how it was calculated, EEI's profits from 1998 to 2002, the indirect expenses and overhead on the Casper project, the costs associated with building Esteb's personal residence, the source of the funds

---

[1] Old Republic Surety Corp., another defendant/appellant, is Esteb's surety.

used to build it, and an explanation of the difference in draws on the project and the amount actually spent on it.

But Esteb made no effort to investigate EEI's profits or losses from 1998 to 2001. Similarly, Esteb did not know how much EEI made on the Casper project. Nor could he testify to the project's indirect expenses. And Esteb said he did not know the cost of his own home. Further, Esteb could provide no information on the difference in the amount of the project's loan draws and the amounts actually spent on the project. Although Esteb repeatedly said that he did not have the information requested, he also said he would have it for trial.

On May 8, 2002, the court granted the Caspers' motion to exclude testimony that would contradict EEI's "don't know" responses in its CR 30(b)(6) deposition. The order bound EEI to Esteb's "don't know" responses as to (1) the amount of profit on the Casper project, (2) its overhead and indirect expenses on the Casper project, (3) the costs associated with building Esteb's personal residence, and (4) the difference in draws on the Casper project and the amount spent on it.

But the May 8 order gave EEI a grace period to provide Esteb's personal residence costs and the difference in draws and amounts spent on the Casper project; if the information was not provided by May 10, EEI would be limited to Esteb's "don't know" answers.[2] The court also granted the Caspers' third motion to compel EEI to produce certain financial information relating to EEI, subject to a protective order where applicable, by May 10.[3]

The Caspers' counsel faxed his signature on the protective order to Esteb's counsel at 2:32 P.M. on May 10, but the

[2] This provision was made by handwritten interlineations, and Esteb claims that it states that EEI could supplement all its CR 30(b)(6) answers, while the Caspers claim that it applied only to information as to the costs associated with building Esteb's personal residence and the difference in draws and amounts spent. The record supports the Caspers' interpretation.

[3] Esteb claims that the supplemental 30(b)(6) responses and documents responsive to the production request were subject to the protective order. The record is not completely clear on this point, but the Caspers do not argue otherwise, and rather argue that they did provide their signature pages by May 10.

Caspers' own signatures were not received until 6:59 P.M. Because of this, Esteb contends that he was not obligated to provide the disputed financial information until he received both signatures.

But Esteb produced no information on the cost of his personal residence and the difference in draws and amounts spent on the Casper project by the May 10 deadline. He did produce a "Profit and Loss on Casper Job" summary on May 13. Clerk's Papers (CP) at 1433. And he provided reconstructed balance sheets on May 14.

On May 17, 2002, the court granted the Caspers' motion to strike the profit and loss summary and granted their motion for sanctions. This ruling bound the Esteb defendants to the CR 30(b)(6) "don't know" responses as to the costs of Esteb's personal residence and the difference between draws and amounts spent on the Casper project; it also excluded the profit and loss summary because it was inconsistent with the court's prior discovery orders.

On May 20, 2002, the court granted most of the Caspers' motions in limine, excluding evidence that would violate the court's previous May 8 and May 17 orders binding Esteb to the "don't know" answers.

## III. Trial

At trial, the judge corrected or answered several times for Esteb when he tried to testify to matters covered by the CR 30(b)(6) orders. For example, when the Caspers' counsel asked Esteb, "Pursuant to an order of the Court, your answer to the question, 'Do you know how much your house cost?' is, 'I don't know'; correct?" 13-A Report of Proceedings (RP) at 1207. When Esteb replied, "I'm not going to say that," the court stated: "Pursuant to a court order, that ['I don't know'] is his response." 13-A RP at 1207-08. When Esteb answered that he did have a breakdown for his engineering counterclaim, the court stated, "By the order of the Court, he does not have a breakdown for that." 13-B RP at 1265. The court made similar statements during cross-

examination of Esteb on EEI's counterclaim[4] and during Esteb's attempts to testify about his Casper profit and the difference between draws taken and amounts spent.[5]

On re-cross about the same topics, Esteb gestured for the court to answer for him. The court answered for Esteb that it was "[c]orrect" that Esteb did not know the amount of overhead or indirect expenses and the difference between the draws and amounts spent on the Casper project. 13-B RP at 1323.

The jury awarded the Caspers $290,067 on their breach of contract claim. The jury also rejected Esteb's counterclaims, but it found in his favor on Caspers' fraud and Consumer Protection Act claim. Esteb seeks a new trial on the contract claim and the Caspers cross-appeal, seeking a judgment as a matter of law on their CPA claims.

## ANALYSIS

### I. Binding Esteb to the CR 30(b)(6) Answers

Esteb argues that the trial court misconstrued the legal effect of a CR 30(b)(6) deposition and that this erroneous view was the basis for its orders binding the Esteb defendants to the "don't know" answers. Esteb further contends that this sanction was disproportionate. The Caspers respond that the court properly bound the Esteb defendants to the CR 30(b)(6) answers as a discovery sanction under CR 37(b).

 CR 30(b)(6) allows a party to depose a corporation and provides that a corporate designee "shall testify as to the matters known or reasonably available to the organi-

---

[4] EEI counterclaimed for additional costs because of the Caspers' alleged delay in selecting windows.

[5] As the Caspers point out in their opening brief at 26-27, Esteb was allowed to testify to the factors that caused or contributed to his counterclaim. The court also allowed Esteb to testify that as a general practice, EEI kept track of the houses it built, but not to the penny, that he kept a general ledger for his personal residence, and that there was no requirement that he keep track of profits and losses on houses EEI built.

zation." The text of Washington's CR 30(b)(6) and Fed. R. Civ. P. 30(b)(6) are nearly identical. *Compare* CR 30(b)(6) *with* FED. R. CIV. P. 30(b)(6). Where a Washington civil rule is identical to its federal counterpart, federal cases interpreting the federal rule are highly persuasive. *Pickett v. Holland Am. Line-Westours, Inc.*, 145 Wn.2d 178, 188, 35 P.3d 351 (2001), *cert. denied*, 536 U.S. 941 (2002). Accordingly, the parties agree that federal cases are persuasive.

■ A corporation has a duty to prepare its deposition designees so they can give full, complete, and nonevasive answers. *Mitsui & Co. (U.S.A.) v. P.R. Water Res. Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981). The designee must then testify as to matters known or reasonably available to the corporation. FED. R. CIV. P. 30(b)(6); CR 30(b)(6).

According to the Seventh Circuit, a corporation is not absolutely bound to its designee's CR 30(b)(6) testimony. *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). Such testimony is the statement of the corporate person, which if altered, may be explained and then explored through cross-examination as to why it was altered. *United States v. Taylor*, 166 F.R.D. 356, 362 n.6 (M.D.N.C. 1996) (citations omitted). While CR 30(b)(6) testimony is binding, "such testimony is not a judicial admission that ultimately decides an issue." *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) (denying motion in limine to exclude evidence that contradicts CR 30(b)(6) testimony); *Taylor*, 166 F.R.D. at 363 (CR 30(b)(6) depositions are not judicial admissions). Like any other deposition testimony, CR 30(b)(6) testimony can be contradicted and used for impeachment purposes. *Hard Chrome*, 92 F. Supp. 2d at 791.

Other courts take a different view of Federal Rule of Civil Procedure 30(b)(6). Unless a corporation can prove that information was unknown or inaccessible, it "cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey v. Am. Forest & Paper Ass'n*, 26 F. Supp. 2d 82, 94 (1998) (binding a corporation to 30(b)(6) testimony where it offered an

affidavit in opposition to summary judgment that contained a different theory of facts); *see also Ierardi v. Lorillard, Inc.*, 1991 WL 158911, 1991 U.S. Dist. LEXIS 11887 (E.D. Pa.) (Mem.) ("[i]f the designee testifies that [the corporation] does not know the answer . . . [it] will not be allowed effectively to change its answer by introducing evidence during trial").

And producing an unprepared 30(b)(6) witness is tantamount to failing to appear and is sanctionable under Fed. R. Civ. P. 37(d). *Black Horse Lane Assocs. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (affirming monetary sanction). Similarly, inadequate preparation of a 30(b)(6) designee can be sanctioned, "based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Taylor*, 166 F.R.D. at 363.

■ Accordingly, Esteb may be correct that CR 30(b)(6) does not absolutely bind a corporate deponent. But we need not decide the issue because Esteb's failure to prepare for the 30(b)(6) deposition was sanctionable. The trial court had the power to bind EEI to Esteb's 30(b)(6) testimony. We consider next whether the court abused its discretion in imposing the sanction.

■ We review a discovery sanction for an abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). A court does not abuse its discretion in sanctioning a party unless that discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Associated Mortgage Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976) (citing *Reid Sand & Gravel, Inc. v. Bellevue Props.*, 7 Wn. App. 701, 705, 502 P.2d 480 (1972)). For example, a ruling based on an error of law is an abuse of discretion. *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 355, 16 P.3d 45 (2000) (citing *Wash. State Physicians Ins.*, 122 Wn.2d at 339), *review denied*, 143 Wn.2d 1012 (2001).

■ When a trial court imposes one of the "harsher remedies" under CR 37(b), " 'it must be apparent from the

record that the trial court explicitly considered whether' " (1) a lesser sanction would probably have sufficed and (2) whether the court found that the party's refusal to obey a discovery order was willful or deliberate and substantially prejudiced the opponent's ability to prepare for trial. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997) (quoting *Snedigar v. Hodderson*, 53 Wn. App. 476, 487, 768 P.2d 1 (1989)). A violation of the discovery rules is willful if done without reasonable excuse. *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 327, 54 P.3d 665 (2002).

Esteb contends that the trial court did not comply with *Burnet*'s requirements. The Caspers disagree and also maintain that *Burnet* does not apply because the trial court did not impose one of the "harsher sanctions" under CR 37(b)(2).

■ The sanction prevented EEI and Esteb from presenting financial information in support of EEI's counterclaim and rebutting Casper's claims that EEI had used their funds on other projects. We consider this one of the harsher available sanctions. *See Burnet*, 131 Wn.2d at 497 (excluding expert testimony was a severe sanction). Thus, we measure the sanctions against *Burnet*'s standards.

■ When they moved for sanctions, the Caspers asked the court to dismiss Esteb's counterclaims or to prohibit him from testifying about his company's balance sheets. The court refused to dismiss the counterclaims; instead, it bound Esteb to his CR 30(b)(6) answers. At the sanctions hearing, the court explained its reasoning, "[a]nd I think that is the best sanction. I don't think it's a sanction, I think it's the way that things are operating and what the discovery indicates." 7 RP at 276. We conclude from these comments and the court's refusal to dismiss EEI's counterclaim, that the court did consider whether a lesser sanction would have sufficed. *See Burnet*, 131 Wn.2d at 494.

■ The Caspers admit the trial court did not use the words "willful" and "substantial prejudice." Br. of Resp. at 39-40. Nevertheless, they contend that the trial court's

findings establish Esteb's willfulness and that they were substantially prejudiced.

At the May 17 sanctions hearing, the court stated that Esteb was "dodging the bullet, he won't answer the specific questions." 7 RP at 275. During the May 20 in limine hearing, both as to Esteb's counterclaims and the information about profit and loss on the Casper project, the court found that Esteb was "avoiding the question" making discovery "useless." 8 RP at 342-43. And the court expressed frustration that Esteb had failed to provide requested information about his profits and losses at "every discovery step." 8 RP at 341. Again the court characterized Esteb's conduct as making "discovery meaningless" and taking "away the whole reason behind discovery." 8 RP at 337, 339.

We are satisfied on the basis of these comments that the court found that Esteb's failure to provide discovery information was willful and that the Caspers were substantially prejudiced by this failure; they could not prepare their own claims for trial and they could not defend against Esteb's counterclaims. Accordingly, the trial court did not abuse its discretion in refusing to allow Esteb and EEI to alter Esteb's deposition answers.

## II. The Trial Court's Statements During Esteb's Trial Testimony

Esteb argues that when the trial court answered for him during trial, it violated the constitutional prohibition against judicial comments on the evidence.

 Article IV, section 16 of the Washington Constitution provides: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." The section is intended "to prevent the jury from being influenced by knowledge conveyed to it by the trial judge as to his opinion of the evidence submitted," and it "forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some

evidence introduced at the trial." *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970) (citations omitted). An impermissible comment conveys to the jury a judge's personal attitudes toward the merits of a case or permits the jury to infer from what the judge said or did not say that he or she believed or disbelieved the testimony in question. *Hamilton v. Dep't of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988).

 We agree with Esteb that the court's comments during his testimony likely conveyed to the jury the judge's attitude toward Esteb's credibility. But Esteb invited the error.

"Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal." *Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S.*, 112 Wn. App. 677, 681, 50 P.3d 306 (2002) (citing *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 723, 10 P.3d 380 (2000)). This doctrine applies when a party takes an affirmative and voluntary action that induces the trial court to take an action that a party later challenges on appeal. *Lavigne*, 112 Wn. App. at 681 (citing *Thompson*, 141 Wn.2d at 723-24). And every court has the power to enforce an order in the proceedings before it and to compel obedience to its orders. RCW 2.28.010(2), (4).

Here, Esteb made repeated attempts to violate the court's pretrial discovery rulings during his trial testimony. And these attempts caused the trial court to respond in the manner that Esteb now claims is error. As we note above, though the trial court's responses likely conveyed the court's attitude about Esteb's credibility to the jury, it was left little choice because of Esteb's willful attempts to violate its pretrial orders.

III. The Caspers' Consumer Protection Act Claim

 On cross-appeal, the Caspers contend they were entitled to judgment as a matter of law on their Consumer Protection Act claim. They argue that Esteb's violation of a

former version of RCW 18.27.114, the contractor registration statute, establishes the first three elements of their CPA claim per se and that they proved the remaining two elements: injury and causation. Esteb also asserts that a juror's affidavit the Caspers submitted in support of the motion for a judgment as a matter of law is inadmissible under *Ayers v. Johnson & Johnson Baby Products Co.*, 117 Wn.2d 747, 768, 818 P.2d 1337 (1991) ("juror affidavits may not be used for the purpose of contesting the thought processes involved in reaching a verdict") (citing *Robinson v. Safeway Stores, Inc.*, 113 Wn.2d 154, 160, 776 P.2d 676 (1989)). The juror stated: "We thought the other [CPA] elements were satisfied, but not [causation]." CP at 2322. We agree with Esteb; the juror's affidavit cannot be used to impeach the jury verdict. *Ayers*, 117 Wn.2d at 768.

 The elements of a private claim under Washington's Consumer Protection Act are: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that impacts the public interest and (4) that causes injury to the plaintiff's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

 We review the trial court's decision on a motion for a judgment as a matter of law de novo. *Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001). A judgment as a matter of law is appropriate if "there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997). The evidence must be viewed in the light most favorable to the nonmoving party. *Sing*, 134 Wn.2d at 29.

Assuming without deciding that the Caspers are correct that Esteb's violation of former RCW 18.27.114 (1997) establishes the first three elements of their CPA claim under RCW 18.27.350, we hold the trial court did not err when it denied the Caspers' motion for judgment as a matter of law.

 Esteb concedes the Caspers were injured; but he maintains that the facts do not establish as a matter of law that his failure to give notice caused the injury. Esteb points out that the Caspers did not object to the jury instructions on the CPA causation. Thus, the instructions became the law of the case. *Guijosa*, 144 Wn.2d at 917; *Ralls v. Bonney*, 56 Wn.2d 342, 343, 353 P.2d 158 (1960) (per curiam).

 The court instructed the jury that the Caspers bore the burden of proving causation on their CPA claim and that " '[p]roximate cause' means a cause which in direct sequence produces the injury complained of and without which such injury would not have happened." CP at 1998.

The Caspers testified that if they had known Esteb had not given them a proper notice, they would have been concerned that Esteb was withholding information and would have researched whether Esteb's bonds were sufficient. But the jury found against the Caspers on their CPA claim. And the only disputed CPA issue was whether Esteb's notice failure caused the Caspers' harm. The jury was not obligated to accept the Caspers' testimony. The trial judge did not err in denying the Caspers a CPA judgment as a matter of law.

IV. Attorney Fees on Appeal

Under RAP 18.1 and the prevailing party provision in their contract, both parties seek attorney fees and costs on appeal. The Caspers are entitled to fees and costs for all issues other than their CPA claim upon complying with RAP 18.1.

Affirmed.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.

Reconsideration denied April 1, 2004.