IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LESCHI PARTNERS, LLC, | No. 84319-2-I |
| Plaintiff, | (Consolidated with 84654-0-I) |
| v. | DIVISION ONE |
| FC LESCHI, LLC, dba BLUWATER BISTRO, | UNPUBLISHED OPINION |
| Defendant. | |
| | |
| ZACHARY FLEET; BART EVANS; AND FC LESCHI, LLC, D/B/A BLUWATER BISTRO – LESCHI, | |
| Respondents, | |
| v. | |
| SENTINEL INSURANCE COMPANY LTD; a foreign insurance company, part of the HARTFORD FIRE & CASUALTY GROUP, | |
| Petitioners. | |

COBURN, J. — Central in this dispute between BluWater Bistro (BluWater) and its insurer is how the insurer handled claims related to an electrical panel and wiring in the building's basement-level garage after an electrical arc resulted in a fire. The landlord

blamed BluWater for negligently causing the fire and maintained that the cost of repairing the electrical panel and wiring[1] was covered as a first-party claim[2] under BluWater's insurance policy.  The insurer disagreed that the electrical panel met the definition of business personal property and suggested that the repairs could be covered by the landlord's own insurance policy.  The landlord sued BluWater and BluWater[3] sued its insurer as a third-party defendant.  In a series of partial summary judgment motions, BluWater moved for declaratory judgment that its insurance policy covered the electrical panel and that its insurer failed its duty to defend.  BluWater also asserted that the insurer breached its contract, acted in bad faith, and violated the Consumer Protection Act (CPA).[4]  BluWater also moved for various damages, costs and fees.  The superior court granted the motions and awarded damages as well as costs and attorney fees to BluWater.  In addition, the court imposed sanctions on the insurer after finding it violated discovery rules.

We hold that, under the policy, the electrical panel and the relevant fans and ducts in the same vicinity is part of the "building" and that the policy explicitly does not provide coverage for the building with the exception of property that qualifies as "tenant improvement and betterments."  Because there remains a genuine issue of material fact as to whether the electrical panel is covered under that provision or under additional

---

[1] Any future reference to the electrical panel and wiring will be referred to as simply electrical panel.

[2] Third-party insurance involves protection for the policyholder for liability it incurs to someone else, while first-party insurance involves protection for losses to the policyholder's own property.  Olds-Olympic, Inc. v. Com. Union Ins. Co., 129 Wn.2d 464, 479, 918 P.2d 923 (1996).

[3] The plaintiffs in the third-party complaint included the operators of the restaurant Zachary Fleet and Bart Evans.

[4] BluWater also claimed Hartford violated the Insurance Fair Conduct Act (IFCA) and committed constructive fraud.  Those claims are not at issue in this discretionary appeal.

2

coverage provisions, we reverse the trial court's summary judgment order concluding the electrical panel was covered as a first-party claim. However, we affirm the court's summary judgment ruling that the insurer acted in bad faith, violated claim-handling regulations and the CPA when it failed to investigate the landlord's negligence claim against BluWater. We affirm in part and reverse in part the court's award of damages. We reverse the award of costs and attorney fees. Lastly, we affirm the trial court's finding that Hartford committed discovery violations, but reverse in part the trial court's sanctions that relinquish the court's discretion to BluWater's counsel. We affirm in part, reverse in part, and remand.

## FACTS

BluWater is a restaurant owned by FC Leschi, LLC and operated by Zachary Fleet and Bart Evans. BluWater leases its space in a building owned by Leschi Partners, LLC (the landlord).[5] BluWater purchased a commercial insurance policy from Hartford Fire Insurance Company where the insurer is Sentinel Insurance Company, Limited (collectively Hartford).[6] BluWater purchased both first-party and third-party coverages. On August 26, 2021 a fire began in an electrical panel located in a basement-level garage under the restaurant. As a result of the fire, the restaurant was forced to close from August 26 to September 9.

---

[5] The owner of the building is also referred to in the record as "Alco Investment Company." Because the parties do not suggest any relevant distinction between Alco Investment and Leschi Partners, LLC as it relates to these matters, we refer to Leschi Partners, LLC and Alco Investment Company collectively as the landlord.

[6] The insurance policy identifies the insurer as Sentinel Insurance Company, Limited located in Hartford, Connecticut, but also uses the logo "The Hartford." The insurer's claims adjuster identifies his employer as "Harford Fire Insurance Company." Petitioners identify the responding third-party defendants as Sentinel and Hartford Fire Insurance Company, but clarifies that "Hartford Fire & Casualty Group" is a non-existent entity. Petitioners admit Hartford Fire employs the personnel working for Hartford Fire and Sentinel.

BluWater submitted a claim to its insurer, Hartford, the day of the fire. The next day, Evans spoke to the first claims adjuster assigned, Steve Penner. During the conversation, Penner asked if the landlord was taking care of the electrical panel damage and Evans said, "Yeah. I believe they are. Yeah. They better be." Penner told Evans that Hartford would be looking into whose fault it was as they "always look into the potential of subrogation." Penner told Evans that BluWater was covered for its loss and Penner would be sending him information on what documents were needed related to food, inventory and income loss. On August 30, BluWater's claim was reassigned to Ryan Brichetto.

On September 8, Hartford sent a forensic investigator to the restaurant to examine the premises and determined in a one-page report that the fire "originated at an electrical service panel located in a locked garage on the basement level located below BluWater. This space was not part of the restaurant, but rather housed equipment controlled by the owner of the business complex." The investigator concluded that the "ignition source was errant electrical activity which led to an explosion of the service equipment" and that the "Cause Classification" of the fire is "accidental." The investigator reported that its file will be closed but may be reopened upon request. On October 18, BluWater called Brichetto explaining that his landlord seemingly expects BluWater to pay for the fire damages to the building. Brichetto advised that based on his review of BluWater's lease, BluWater has no responsibility to fix repairs and that Brichetto would draft and send a partial denial.

On October 29, Hartford sent a letter to BluWater denying coverage for the electrical panel because it was part of the building and the policy did not provide

coverage for the building. The letter also stated that Hartford did not find that the panel met the definition of any covered provision as a "tenant improvements" or "business personal property." BluWater passed along this response to the landlord. The landlord's attorneys sent a November 9 letter to BluWater disagreeing with Hartford's interpretation of BluWater's policy, providing its own policy analysis that the electrical panel is covered as BluWater's business personal property, but if Hartford disagrees, then the electrical panel is still covered under BluWater's business liability coverage. The landlord asserted that BluWater's negligence caused an accident that resulted in the property damage. Specifically, the landlord alleged that BluWater "committed permissive waste because it negligently permitted a broken condensation line to drip water onto the electrical equipment causing an electrical arc and fire."[7] The landlord concluded

> Again, we urge [BluWater] to promptly confer with its own Insurance coverage lawyers about [Hartford's] denial of coverage and take immediate steps to challenge [Hartford's] bad faith denial.
> If [BluWater] fails to secure insurance coverage for this claim, then [the landlord] will be forced to take legal action against [BluWater] for the property damage it negligently caused.

On November 19, BluWater wrote Hartford and included a copy of the November 9 letter from the landlord, BluWater wrote

> Please find enclosed/attached a letter from the attorneys for our landlord. As you can see, they have a different analysis of Hartford's obligations and the coverage under our policy.
> We again demand that Hartford provide coverage for the damages caused by the fire, and to protect our company from all exposures resulting therefrom.

---

[7] The landlord included a photograph of the scene showing a broken condensation line, presumably from BluWater's refrigerator, that was not connected to a drain and instead redirected into a tray in an area of the kitchen floor that allegedly did not have waterproofing/lashing and was above the electrical panel.

Hartford responded in a December 22 letter disagreeing with the landlord's policy analysis, maintaining that the electrical panel was not covered as BluWater's property. As to the referenced liability coverage, Hartford wrote, "Please be advised that this letter is in response to the first-party portion of the policy you have with Hartford. Please advise if you would like us to also open a claim under your general liability policy." Hartford went on to explain that it was under the impression that the landlord had a first-party property policy and that its "insurer had previously agreed to cover and repair the damage to the electrical panel. We are unsure why those circumstances have changed." Hartford did not provide any explanation on how the landlord's allegations of negligence against BluWater could trigger the policy's liability provision and what that would entail. Nor did Hartford ask the investigator to reopen its investigation to determine the cause of the electrical arc.

In January 2022, the landlord sued BluWater seeking payment for the cost of repairs to the electrical panel. BluWater then sued Hartford as a third-party defendant and sought a declaratory judgment to determine if BluWater's insurance policy covered the electrical panel. BluWater also claimed breach of contract, insurance bad faith, violations of the CPA and violations of the Insurance Fair Conduct Act (IFCA), and constructive fraud.

PROCEDURAL HISTORY

In its first motion for partial summary judgment filed on May 12, BluWater claimed Hartford breached the insurance policy, committed bad faith, and violated the CPA. Specifically, BluWater asserted Hartford failed to explain how the policy's additional coverage provision covered the electrical panel. BluWater also asserted that Hartford

6

failed to investigate the cause of the fire and explain or address the policy's liability coverage. To support its motion, BluWater submitted excerpts from the April 7, 2022 deposition of Hartford's insurance adjuster, Brichetto.

Brichetto conceded that Hartford did not request that its investigator determine whether the electrical explosion was caused by dripping water and explained that it did not matter because ultimately the electrical panel was not covered under the policy's business personal property provision. The adjuster said that he never explained the liability coverage to BluWater because he was not a "liability adjuster" and BluWater had filed a property claim. The adjuster said he knew that the landlord had sued BluWater claiming it negligently caused the fire, but did not know if any liability adjuster had been assigned. The adjuster admitted that he reviewed BluWater's November 19 letter with the leadership team that consisted of two home office consultants, including Derek Hyde. The adjuster also admitted that it was Hyde who drafted the December 22 denial letter that the adjuster read and signed without making any changes. The adjuster could not explain why Hartford, to date, had not contacted BluWater or its attorney to discuss the liability claim after BluWater got sued. The landlord on May 13 filed a motion for partial summary judgment and joinder in third-party plaintiff's motion for partial summary judgment.

Four days before the hearing on the motion, the landlord filed a notice of settlement and withdrawal noting that all its claims against all parties have been resolved. The court granted BluWater's partial summary judgment motion. The court ruled that the electrical panel was covered under BluWater's insurance policy. The court also found that Hartford violated the fair claims practices regulations found in

7

Chapter 284-30 of the WACs which constituted a per se violation of the CPA, chapter 19.86 RCW. The court additionally found Hartford committed insurance bad faith. The court ruled that Hartford owed at least $274,617 for the repair of the electrical panel and related structures. The court denied Hartford's subsequent motion for reconsideration.

In September 2022 BluWater filed a second motion for partial summary judgment seeking damages regarding business personal property (inventory), business income, attorney fees and costs of investigation. Its request included $9,371.25 for new fans and ducts located in exactly the same place as the electrical panel. BluWater also requested a finding that Hartford violated specific claim-handling regulations: WAC 284-30-370, WAC 284-30-330, and WAC 284-30-330(1).

In its October 28 order, the court granted BluWater's second partial summary judgment motion and awarded $91,855 for business personal property; $64,635 for business income loss (reserving the remaining requested amount for trial); $9,371.25 for fans and ducts; $35,220.58 for cost of investigation; and $378,852.50 in attorney fees. "[A]s to the damages claimed in this motion," the court also ruled that Hartford violated, WAC 284-30-370 (failure to complete investigation within 30 days); WAC 284-30-350 (failure to explain coverages); and WAC 284-30-330(1) (misrepresentation of policy benefits). The court awarded attorney fees to BluWater under the ABC rule,[8] the

---

[8] The ABC rule is an equitable rule under which attorney fees are compensable as consequential damages in certain situations. LK Operating, LLC v. Collection Grp, LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014). The rule has three elements: "'(1) a wrongful act or omission by A . . . toward B . . .; (2) such act or omission exposes or involves B . . . in litigation with C . . .; and (3) C was not connected with the initial transaction or event . . ., viz., the wrongful act or omission of A toward B.'" Id. (alterations in original) (internal quotation marks omitted) (quoting Blueberry Place Homeowners Ass'n v. Northward Homes, Inc., 126 Wn. App. 352, 359, 110 P.3d 1145 (2005)). The party seeking attorney fees as damages under this rule must meet all three elements for the rule to apply. Id. at 124.

CPA, Olympic Steamship, and under common law bad faith.

The court also, on October 28, granted BluWater's motion to compel discovery and imposed sanctions.

Hartford sought discretionary review of both summary judgment orders,[9] the denial of its motion for reconsideration, and the order compelling discovery and imposing sanctions. A commissioner of this court granted review.

DISCUSSION

Contractual Claims

*A. Electrical Panel as First-Party Claim*

The trial court granted BluWater's first partial summary judgment motion declaring that the insurance policy covered the electrical panel under multiple provisions. The court determined that the electrical panel met the policy's definition of "Property of others in your care, custody or control" and "Tenant Improvements and Betterments." The court also ruled that the policy provided coverage under the "Equipment Breakdown," "Water and Molten Material Damage," and "Extra Expense" provisions. Hartford maintains that the electrical panel is part of the building, which is

---

[9] Hartford had filed a cross-motion for summary judgment after BluWater filed its motion for partial summary judgment as to breach of insurance policy, bad faith, and CPA violations. At issue in the motion was the interpretation of the policy and the extracontractual claims by BluWater. But Hartford noted its motion for a hearing on August 5 after the June 17 hearing to address BluWater's motion. The court granted BluWater's motion for partial summary judgment, but did not rule on Hartford's cross-motion for summary judgment. At oral argument on appeal Hartford asks us to grant summary judgment in its favor. Wash. Court of Appeals oral argument, Hartford Fire Ins. Co. v. FC Leschi, LLC, No. 84319-2-I (Nov. 1, 2023), at 2 min., 40 sec. to 3 min., 3 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2023111105. We decline to consider an argument that Hartford did not brief. See RAP 10.3(a)(6) (requiring an appellant's brief to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"); see also Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 845, 347 P.3d 487 (2015).

not covered under the policy.

We review summary judgments de novo. Strauss v. Premera Blue Cross, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Rangers Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)); CR 56(c). We must construe all facts and inferences in favor of the nonmoving party. Scrivener v. Clark College, 181 Wn.2d 439, 444, 334 P.3d 541 (2014). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

The party moving for summary judgment bears the initial burden of showing that there is no disputed issue of material fact. Haley v. Amazon.com Services, LLC, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022) (citing Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989)). The burden then shifts to the nonmoving party to present evidence that an issue of material fact remains. Id. The nonmoving party may accomplish this by setting forth facts and documents that would be admissible as evidence through depositions, answers to interrogatories, and admissions. CR 56(e). The trial court must construe all evidence and reasonable inferences from that evidence in favor of the nonmoving party. Id. at 217 (citing Boyd v. Sunflower Props. LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016)). In the instant case, the nonmoving party is Hartford. The trial court may not weigh the evidence, assess credibility, consider the likelihood that the evidence will be proven true, or otherwise resolve issues of material

10

fact. Id.

Interpretation of an insurance contract is a question of law this court reviews de novo. Kalles v. State Farm Mut. Auto. Ins. Co., 7 Wn. App. 2d 330, 333, 433 P.3d 523 (2019) (citing Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 52, 164 P.3d 454 (2007)). Insurance policies are construed as contracts. Id. (citing Findlay v. United Pac. Ins. Co., 129 Wn.2d 368, 378, 917 P.2d 116 (1996)). The insurance contract is construed as a whole, with the policy given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." Id. (quoting Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wn.2d 618, 627, 881 P.2d 201 (1994)). Defined terms of the contract are applied as written so long as they comport with Washington law. Xia v. ProBuilders Specialty Ins. Co., 188 Wn.2d 171, 182, 400 P.3d 1234 (2017). Undefined terms are given their "plain, ordinary, and popular meaning." Hill and Stout, PLLC v. Mut. of Enumclaw Ins. Co., 200 Wn.2d 208, 218, 515 P.3d 525 (2022) (quoting Xia, 188 Wn.2d at 182)). "If the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists." Id. (quoting Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005)).

The insurance policy purchased by BluWater specifically excluded coverage for the building owned by the landlord. The policy defines "covered property" as "the following types of property for which a Limit of Insurance is shown in the Declarations." The declarations included in the policy describe "building and business personal property limits of insurance." Next to "BUILDING," the limit states "NO COVERAGE."[10]

---

[10] According to the policy's special property coverage form, "Buildings" includes permanently installed fixtures, machinery and equipment, as well as personal property that is

11

The policy does, however, provide coverage for "business personal property" located in or on the building. According to the policy, business personal property includes "property of others that is in your care, custody or control" and "tenant improvements and betterments."

*(i) Tenant Improvements and Betterments*

BluWater's policy defines "tenant improvements and betterments" as "fixtures, alterations, installations or additions made a part of the Building you occupy but do not own and that you cannot legally remove; and (a) Which are made at your expense; or (b) That you acquired from the prior tenant at your expense." The prior tenant before BluWater was a BaDa restaurant. BaDa Restaurants, Inc. and the other BaDa entities (collectively BaDa) transferred all of their restaurants, property and leasehold contents to BluWater.

Brichetto, Hartford's insurance adjuster, testified in his deposition that in order for the tenant improvement and betterment provision to apply

> we have to be looking at this like we're the previous tenant. So if we were BaDa Leschi, we would have had to have said, 'All right, we're going to install our own electrical panels here. We're going to – we're going to make these at our expense.' That, therefore, is a tenant improvement made by BaDa Leschi.
> Now, BluWater comes in and purchases the business from BaDa Leschi. If they purchased the tenant improvements with that and if – if the electrical panels were a tenant improvement, yes, then we would have acquired them from the previous tenant improvements at our expense. But if BaDa Leschi didn't install those electrical panels, those by definition then are not tenant improvements made by BaDa Leschi. Therefore, they're not tenant improvements that we acquired because they're not tenant improvements to begin with.

BluWater does not claim that it installed the electrical panel, but, instead, claims that it

owned by the tenant that is used to maintain or service the buildings or structures on the premises.

purchased the electrical panel as a "tenant improvement and betterment" completed by the previous tenant, BaDa, and that BluWater acquired the panel when it purchased the restaurant from BaDa. To support its claim, BluWater submitted the purchase and sale agreement and an agreement that "Bada Entities hereby assign and transfer all of the BaDa Entitites' respective rights, title, and interests in and to the Collateral to" BluWater. The description of the Collateral includes all of BaDa's

> chattels, furniture, fixtures, goods, equipment, inventory, prepaid assets, and general intangibles (including goodwill and going concern value), and all of the same located on or about or used or usable or resulting from the business and restaurant operations of any of BaDa [entities] . . . all keys, plans and specifications, use or license agreements, and the like, personal property of every kind belonging to BaDa [entitites] . . . which shall be construed to include all such property now or to be located, affixed, owned, bought for use or used or usable at or in any way related to or on or in connection with the business and restaurant operations, whether real, personal, tangible, or intangible and whether used on any of the above-listed premises, or stored away from any of said premises.

The documents BluWater provided does not specifically list the electrical panel. Based on the record before us, whether Bada installed the electrical panel as a tenant improvement remains a genuine issue of material fact. Neither party presented any evidence to the superior court as to who installed the electrical panel.[11] BluWater fails to establish that the electrical panel, as a matter of law, meets the definition of "tenant improvements and betterments."

*(ii) Care, Custody, or Control*

Although the policy does not define, "care, custody, or control," the Washington

---

[11] At oral argument, Hartford's counsel first indicated that the electrical panel was installed by the previous tenant of the space. Wash. Ct. of Appeals oral arg., *supra*, at 5 min. 42 sec. through 6 min. 48 sec. Counsel later clarified that it did not know who had installed the electrical panel and the record was not clear on the issue, but argued that the record was clear that BluWater neither installed nor acquired the panel. Id. at 32 min., 37 sec. to 33 min., 15 sec.

Supreme Court has previously held that these terms are "words of common usage and connotation in the vocabulary of laymen" and "are unambiguous and must be given their plain and ordinary meaning." Madden v. Vitamilk Dairy, Inc., 59 Wn.2d 237, 239, 367 P.2d 127 (1961). This court has previously held that where a vehicle was left to the defendants to store and keep safe from vandalism, it was in the defendant's "care, custody, and control" because they "undertook affirmative duties" to store it and exclude it from anyone but its owner. Cashmere Pioneer Growers, Inc. v. Unigard Sec. Ins. Co., 77 Wn. App. 436, 440, 891 P.2d 732 (1995). Similarly, this court has previously found that where a company "undertook contractual duties to care for the apples in a particular manner, to maintain them in an atmosphere with a specified temperature and chemical composition," the apples were in the "care, custody, and control" of that company. Id.

Hartford maintains that the policy expressly defines "covered property" as the types of property for which "a Limit of Insurance is shown in the Declarations," and that the declarations expressly state that there is "NO COVERAGE" for the "BUILDING." Thus, Hartford argues, "[p]roperty of others that is in your care, custody or control," reaches property that meets that definition that does not qualify as the building. BluWater counters that the "NO COVERAGE" indication simply reflects that they did not purchase coverage for the building, but that does not bar coverage of the electrical panel under the "care, custody or control" provision which is part of its purchased policy. Hartford has the better argument.

Courts avoid interpreting contracts in ways that lead to absurd results. Hartford Fire Ins. Co. v. Columbia State Bank, 183 Wn. App. 599, 608, 334 P.3d 87 (2014).

14

Rather, contracts are to be construed to give effect to all parts of the contract and not interpreted in ways that render some of the language meaningless or ineffective, or render contract obligations illusory. Pelly v. Panasyuk, 2 Wn. App. 2d 848, 413 P.3d 619 (2018); Taylor v. Shigaki, 84 Wn. App. 723, 930 P.2d 340 (1997).

The policy did not simply reflect that BluWater chose not to purchase coverage for the building, it expressly defined "covered property" and specifically excluded the building. Notably, the "tenant improvements and betterments" provision, which, by definition, covered "fixtures, alterations, installations or additions made a part of the Building you occupy but do not own and that you cannot legally remove." This provision plainly functions as an exception to the exclusion of building coverage. The "care, custody, or control" is not similarly defined. Interpreting that provision to reach any part of the building that is in the care, custody or control of the tenant would be an exception that would swallow the exclusion and lead to absurd results. In order to give non-contradictory plain meaning to this provision and the policy's exclusion, the property of others that is in BluWater's care, custody or control must be read to reach property that does not meet the definition of Building. For example, this would provide coverage for restaurant customers' coats and jackets that BluWater may take temporary care, custody or control of while they dine in the restaurant, but exclude any property claims for damage to the building despite the fact BluWater may have "control" of the building by virtue of possessing the keys to it.

Even if we were to consider whether the electrical panel was under the care, custody or control of BluWater, that premise is a disputed fact. BluWater submitted a declaration stating that the electrical panel was located in a locked garage contained

15

within the space leased by BluWater. An investigator for Hartford reported that the "fire originated at an electrical service panel located in a locked garage on the basement level located below Bluwater Bistro. This space was not part of the restaurant, but rather housed equipment controlled by the owner of the business complex." Evans, BluWater's manager, in a declaration disputed that fact, asserting that the garage is part of BluWater's leased space. It is undisputed that BluWater leased its space from Leschi Partners, LLC, who owned the building. According to the lease agreement, the garage and common electrical service are considered common areas and the landlord shall maintain the common areas. Based on this record, there remains a genuine issue of material fact as to whether the electrical panel was in the care, custody, or control of BluWater.

We hold that the superior court erred in concluding as a matter of law that the electrical panel was covered under the "care, custody or control" provision of the policy.

*(iii) Additional Coverages*

The trial court also found coverage under the policy's "equipment breakdown," "water and molten material damage" and "extra expense" provisions.

Each of these provisions appear under the policy's "Additional Coverages" section. Under "Equipment Breakdown," Hartford "will pay for direct physical loss or physical damage caused by or resulting from an equipment breakdown accident to equipment breakdown property." "Equipment Breakdown Property means Covered Property built to operate under vacuum or pressure, other than weight of contents, or used for generation, transmission or utilization of energy." As previously discussed, there remains a genuine issue of material fact as to whether the electrical panel

qualifies as covered property.

Next, under "n. Water Damage, Other Liquid, Powder or Molten Material

Damage,"

> If direct physical loss or physical damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.
> We will not pay the cost to repair any defect that caused the direct physical loss or physical damage except as provided in paragraph A.5.c., Equipment Breakdown of this coverage form.

The plain language of this provision provides coverage to the cost of tearing out and

replacing any part of the building or structure to repair damage to the system or

appliance from which the water or other substance escapes when there is a covered

loss that was a direct result of water or other liquid, powder or molten material damage.

BluWater submitted a declaration from an electrical engineer who concluded that an

electrical arc caused molten material to escape from the electrical panel and ignite both

plastic and other combustible items, thereby causing the fire.  Whether the damage to

the electrical panel that was caused by molten material is covered turns on whether the

electrical panel is a covered loss, which, as discussed above, remains a genuine issue

of material fact.  Thus, the trial court erred in concluding that as a matter of law the

electrical panel was covered under the molten material damage provision.

The policy's "Extra Expense" provision provides:

> (1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

When BluWater filed its first motion for partial summary judgment, it was apparent that it was the landlord who initially incurred the expense of repairing the electrical panel and was suing BluWater to cover the cost of the repairs. In other words, BluWater's claim was not for a reimbursement for the cost of repairing the electrical panel as an extra expense that *it had incurred*. BluWater argues that it does not matter that the landlord had paid for the repairs because Hartford knew about it and did not explain the coverage or extend benefits. However, that argument relates more to the duty to defend which relates to a third-party claim, which we address below, not a first-party claim. The trial court erred in determining that the cost of repairing the electrical panel was covered as a matter of law under the policy's extra expense provision.

BluWater does not meet its burden to establish that as a matter of law the electrical panel is covered under these additional coverage provisions.

*B. Damages*

Hartford maintains that the trial court improperly awarded some of the damages as a matter of law in its October 28 order.

"Damage determinations are a classic example of the type of questions which are traditionally decided by a jury." Brust v. Newton, 70 Wn. App. 286, 293, 852 P.2d 1092 (1993) (citing Sofie v. Fibreboard Corp., 112 Wn.2d 636, 645-46, 771 P.2d 711 (1989)). However, where there is no genuine issue of material fact as to the amount of damages, the trial court may award them on summary judgment. The purpose of summary judgment is to avoid an unnecessary trial. Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

18

*(i) Electrical Panel and Related Structures*

The trial court in its first summary judgment order ruled that Hartford "owes at least $274,617 for the repair of the electrical panel and related structures." Hartford does not directly argue that the court erred in this regard but notes that the trial court did not state to whom Hartford owes this amount and that BluWater never incurred this expense.

In its motion for partial summary judgment, BluWater submitted documentation to support that the landlord's bills for repairs to the electrical panel and related structures were not in dispute and totaled $274,617. Although the trial court was aware of the notice of settlement, Hartford did not present documentation of actual payment at the time of oral argument. In fact, Hartford did not issue its $315,000 settlement check[12] to the landlord until the day the court issued its summary judgment order on June 27.

It is not apparent in the record whether Hartford's check was issued before or after the court issued its order on June 27. But at the motion hearing BluWater asserted that nothing had been paid and Hartford did not present any evidence of actual payment. Based on the information available to the trial court at the time it issued its ruling, it did not err in declaring that Hartford *owed* the cost of the repair.

*(ii) Business Income Loss*

In its second partial summary judgment motion, BluWater had requested $273,016 in business income loss. By the time of oral argument, the parties agreed that Hartford would pay $64,635 and leave the remaining amount as an issue for trial. The

---

[12] BluWater had asserted in its written partial summary judgment motion that the landlord claimed a total of $330,055.50, which included the $274,617 repair costs as well as claimed attorney fees, costs and prejudgment interest.

trial court granted that request. Now, Hartford contends on appeal that because it had concerns that BluWater was "double dipping" and disputed the originally claimed amount, it was error for the court to award the $64,635 because genuine issue of material fact remains.

By agreeing to pay the $64,635 at the motion hearing, Hartford waived any challenge to that award. We "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005).

*(iii) Repair Costs for Fans and Ducts*

In BluWater's second motion for partial summary judgment, it simply listed under relief requested $9,371.25 in damages for repair costs for fans and ducts destroyed by the fire. It is undisputed that the fan and ducts are located in the exact same place as the electrical panel. Just as it did with the electrical panel, Hartford contends the fans and ducts are part of the building and not covered under the policy. BluWater argues that the fans and ducts are covered in the policy in the same way as the electrical panel is covered. The trial court ruled that the fans and ducts were recoverable as business personal property under the "care, custody or control" and the "Tenant Improvements and Betterments" provisions, as well as under additional coverage for "Equipment Breakdown" and "Extra Expense."

Nothing in the record suggests that fans and ducts are anything but part of the building. Just as it was improper for the court to determine as a matter of law that the electrical panel was covered as business personal property, the same reasoning applies to the fans and ducts. The court also erred in ruling that they are covered under the

20

"care, custody, or control" provision for the same reasons the electrical panel are not covered under that policy. The trial court also erred in ruling as a matter of law that the fans and ducts qualify as "Tenant Improvements and Betterments" because genuine issue of material fact remain as to whether BaDa installed the fans and ducts and whether BluWater acquired them from BaDa, the previous tenant. Because Equipment Breakdown only reaches covered property, the court also erred in finding coverage under that provision as a matter of law.

However, unlike the electrical panel, the landlord did not pay for the replacement of the ducts and fans. As to whether that cost is covered under the Extra Expense provision of the policy, Hartford argues that this provision is "dependent upon whether the property at issue was Covered Property." The "Extra Expense" provision is under the policy's "Coverage Extensions." But the policy expressly provides a "Limitation" to that extended coverage. It states

> This Extra Expense Coverage does not apply to:
> (a) Any deficiencies in insuring building or business personal property . . .

BluWater provides no argument to address this limitation on the application of the Extra Expense Coverage. The policy expressly states that it does not cover "Buildings" and the meaning of "Buildings" include permanently installed fixtures. Accordingly, the court erred in awarding BluWater $9,371.25 in damages for the fans and ducts as a matter of law because a genuine issue of material fact remains as to whether the fans and ducts are "Tenant Improvements and Betterments" so that they would qualify as business personal property under the policy.

Extra-Contractual Claims

The court agreed with BluWater in its first partial summary judgment motion focused on the electrical panel that Hartford had acted in bad faith, and violated 11 claims-handling regulations[13] and the CPA.  The court also agreed with BluWater in its second partial summary judgment motion focused on damages that Hartford violated three specific claims-handling regulations[14] related to the damages requested in that motion.

*A. Bad Faith*

On appeal, Hartford argues that it did not act in bad faith as to the first-party electrical panel claim, but does not otherwise address whether it acted in bad faith as to the lack of investigation of the liability claim.[15]

"An insurer has a duty of good faith to its policyholder and violation of that duty may give rise to a tort action for bad faith."  Leahy v. State Farm Mut. Auto. Ins. Co., 3 Wn. App. 2d 613, 631, 418 P.3d 175 (2018) (quoting Indus. Indem. Co. of the N.W. v. Kallevig, 114 Wn.2d 907, 917, 792 P.2d 520 (1990)).  The policyholder is required to show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded in order to succeed on a claim of bad faith.  Id.  If there is no reasonable justification for the insurer's denial of coverage, the denial constitutes bad faith.  Id.  An insurer has not acted in bad faith if "reasonable minds could not differ that its denial of

---

[13] The court found that Hartford violated: WAC 284-30-330(1), WAC 284-30-330(2), WAC 284-30-330(3), WAC 284-30-330(4), WAC 284-30-330(7), WAC 284-30-330(13), WAC 284-30-350(1), WAC 284-30-350(2), WAC 284-30-360(3), WAC 284-30-360(4), WAC 284-30-370.

[14] The court found that Hartford violated: WAC 284-30-370, WAC 284-30-350, and WAC 284-30-330(1).

[15] On June 27, 2022, Hartford paid $315,000 to the landlord to settle the landlord's liability claims against BluWater.

coverage was based upon reasonable grounds." Id. (quoting Smith v. Safeco Ins. Co., 150 Wn.2d 478, 484, 78 P.3d 1274 (2003)).

Additionally, an insured "may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist." Coventry Assocs. v. Am. States Ins. Co., 136 Wn.2d 269, 279, 961 P.2d 933 (1998). In other words, "a first-party insured has a cause of action for bad faith investigation even where there is ultimately no coverage." St. Paul Fire and Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 131, 196 P.3d 664 (2008) (citing Coventry, 136 Wn.2d at 279)). This duty has been extended to third-party liability claims as well. St. Paul Fire and Marine, 165 Wn.2d at 131. An insurer's duty to indemnify where coverage exists is separate from its duty of good faith. Coventry, 136 Wn.2d at 279. An insurer can be found to have acted in bad faith where they have failed to "fulfill its contractual and statutory obligation to fully and fairly investigate the claim." Id. An insurer who fails to fulfill this obligation "plac[es] the insured in the difficult position of having to perform the insurer's statutory and contractual obligations." Id.

Because genuine issues of material fact remain in determining whether the electrical panel is covered as a first-party claim under the policy, it follows that, based on what was presented to the trial court in the challenged summary judgment motions, finding Hartford acted in bad faith in denying such coverage also cannot be determined as a matter of law. However, BluWater also asserted Hartford acted in bad faith regarding Hartford's lack of investigation into the landlord's claims of negligence.

Hartford summarily argues that it acted reasonably in its treatment of BluWater's

liability claim, where, on summary judgment all facts and reasonable inferences are viewed in the light most favorable to Hartford as the nonmoving party. Hartford argues that the trial court should have denied summary judgment when Hartford raised material issues of fact. But Hartford does not discuss what those facts are or cite to the record. RAP 10.3(a)(6) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record).

The landlord alleged that BluWater acted negligently in permitting a "broken condensation line to drip water onto the electrical equipment causing an electrical arc and fire." BluWater on November 19, 2021 forwarded to Hartford the landlord's letter that included the negligence allegations and warned that "[i]f [BluWater] fails to secure insurance coverage of this claim, then [the landlord] will be forced to take legal action against [BluWater] for the property damage it negligently caused." In forwarding that information to Hartford, BluWater stated, "[w]e again demand that Hartford provide coverage for the damages caused by the fire, and to protect our company from all exposures resulting therefrom." Despite this information, Hartford did not investigate the cause of the electrical arc that lead to the fire and did not settle the landlord's claim against BluWater until more than seven months after BluWater's November 19 letter demanding protection. Moreover, in an April 7, 2022 deposition, more than four months after BluWater's November 19 letter to Hartford, adjuster Brichetto could not explain why Hartford, as of that date, had not contacted BluWater or its attorney to discuss the liability claim after the landlord sued BluWater. This was despite the fact Brichetto had reviewed the November 19 letter with Hartford's leadership team. These are undisputed facts.

On this basis, we affirm the trial court's conclusion that Hartford acted in bad faith as a matter of law.

*B. Consumer Protection Act*

The CPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Under the CPA, any person "who is injured in his or her business or property" by a violation of the act may sue. RCW 19.86.090. In creating the CPA, the legislature intended that it "be liberally construed [so] that its beneficial purposes may be served." RCW 19.86.920. Remedies available under the CPA include injunctive relief, damages, attorney fees and costs, and treble damages up to $25,000. RCW 19.86.090.

The plaintiff must prove five elements to succeed in a CPA claim: (1) an unfair or deceptive act or practice, which (2) occurs in trade or commerce, and (3) affects the public interest, for which (4) the plaintiff suffered injury to business or property, and was (5) caused by the act in question. Merriman v. Am. Guar. & Liab. Ins. Co., 198 Wn. App. 594, 627, 396 P.3d 351 (2017) (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986)).

The first two elements required to prove a violation of the CPA may be established by showing that the alleged act constitutes a per se unfair trade practice. Id. Where the legislature has declared that violation of a statute constitutes an unfair or deceptive act in trade or commerce, a per se unfair trade practice exists. Id. An insured can show an unfair or deceptive practice that impacts the public interest by establishing a violation of the regulations related to unfair insurance company practices as set forth in WAC 284-30. Shields v. Enterprise Leasing Co., 139 Wn. App. 664, 675,

161 P.3d 1068 (2007) (citing <u>Dombrosky v. Farmers Ins. Co.</u>, 84 Wn. App. 245, 260, 928 P.2d 1127 (1996)). An insured party may bring an action for violation of the CPA based on a single violation of a claims-handling regulation. <u>Indus. Indem. Co.</u>, 114 Wn.2d at 921.

*(i) June 27 Summary Judgment Order*

Hartford maintains that the trial court erred in ruling on the CPA claims which flowed from its error on first-party coverage. Though we reverse as to the court's ruling on first-party coverage as to the electrical panel, BluWater's first summary judgment motion also raised extra-contractual claims as to how Hartford responded to its duty to defend BluWater from the landlord's negligence claims.

BluWater argues that Hartford has waived any argument as to the court's determination that it violated WAC 284-30-360(3) and WAC 284-30-360(4). We agree. <u>See</u> RAP 10.3(a); <u>Kadoranian v. Bellingham Police Dep't</u>, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992) (assignment of error not briefed is deemed waived).

Hartford does not address these two bases for which the court found Hartford violated the CPA, RCW 19.86.010 as a matter of law. Instead, Hartford argues that BluWater did not prove that Hartford violated "any of the three regulations, particularly where [Hartford]'s conduct was reasonable." But a single claims-handling violation can support a violation of the CPA, and on summary judgment review, we may affirm the trial court's decision on any basis within the record. <u>Davidson Serles & Assocs. v. City of Kirkland</u>, 159 Wn. App. 616, 624, 246 P.3d 822 (2011).

BluWater claimed that Hartford, in violation of WAC 284-30-360(3), failed to respond to pertinent communications from a claimant within 10 days; and, in violation of

WAC 284-30-360(4), refused to provide reasonable assistance to the insured. These claims are supported for the same reasons we affirmed the trial court's determination that Hartford acted in bad faith. Hartford does not present any argument or evidence to establish that a genuine issue of material fact exists as to the court's finding that Hartford violated subsections (3) and (4) of WAC 284-30-360. BluWater has established that Hartford has violated regulations related to unfair insurance company practices, which constitutes a per se unfair or deceptive practice that impacts public interest. Hartford argued in the motion hearing that the Hartford's lack of investigation and response to the landlord's negligence claim caused BluWater to incur expenses to have to conduct its own investigation. An insured can establish harm under the CPA by having to conduct its own investigation when its insurer conducts bad faith investigation of the claim. See Coventry, 136 Wn.2d at 282. Hartford does not dispute on appeal that BluWater incurred expenses in having to defend the landlord's claim.

Hartford has not shown that a genuine issue of material fact remains as to BluWater's CPA claim based on Hartford's failure to investigate the landlord's allegations of negligence against BluWater. Accordingly, we affirm the court's determination that Hartford violated the CPA as a matter of law. However, because we reverse the trial court's ruling that the electrical panel was covered as a first-party claim under the policy, it follows that any of the court's finding of claims-handling regulations related to the first-party claim also is reversed.

*(ii) October 28 Summary Judgment Order*

Hartford maintains that the trial court erred in finding that Hartford violated WAC 284-30-370, WAC 284-30-350, and WAC 284-30-330(1) in BluWater's second partial summary judgment motion.

First, BluWater argued below that Hartford's objection to damages for the fans and ducts was incorrectly grounded in the same reasons it failed to recognize that the electrical panel is covered under the policy. And for that reason, BluWater argues, Hartford violated WAC 284-30-330(1) ("Misrepresenting pertinent facts or insurance policy provisions.") and WAC 284-30-350(1) (failure to explain coverages). Because we hold, as discussed above, that the court erred in finding the fans and ducts were covered under the policy as a matter of law, it follows that finding Hartford violated the relevant WACs based on the same also was improper and requires reversal.

Next, BluWater contends Hartford violated WAC 284-30-350(1) and WAC 284-30-370 in handling of BluWater's business income loss claims.

WAC 284-30-370 requires that "[e]very insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time." BluWater alleged that it had provided all the necessary documentation to Hartford that allowed it to evaluate its claim, including dates of closure, "payroll, sales histories, a spreadsheet of inventory losses with accompanying invoices" and a summary of losses for items destroyed in the fire and accompanying generators. BluWater does not state when these documents were provided to Hartford. Emails between Evans and Brichetto show that Brichetto initially requested these documents on August 31. Evans answered on September 1 stating he

was "collecting invoices and inventories to get over to you." On September 21, Brichetto sent an email requesting further information on the items submitted as part of BluWater's claims for business income and inventory loss. Evans responded on September 27 by stating his bookkeeper had been out of the office and expected her back soon. Brichetto sent two follow up emails requesting the additional information in early October and mid-November. The emails do not show that Evans provided the requested information after each email. Hartford submitted a declaration from a claims-handling expert who reviewed the claim file and deposition transcripts. The expert concluded that Hartford's actions in investigating the inventory and business income claims complied with insurance industry standards.

Although WAC 284-30-370 requires an insurance company to complete its investigation within 30 days of notification of the claim, there is an exception where the investigation cannot be reasonably completed in that time. WAC 284-30-370. The record reflects that there is a genuine issue of material fact as to whether the investigation could have reasonably been completed within 30 days. We reverse the trial court's grant of summary judgment as to the violation of WAC 284-30-370.

BluWater also argues that Hartford violated WAC 284-30-350(1) because it had failed to explain the coverage provided by the business income loss provision in the insurance contract and failed to explain to BluWater how such a claim would be evaluated. BluWater asserts that despite submitting requested information for its claim for business income and lost inventory claim, it received no explanation in return as to the status of that claim. Evans submitted a declaration that in October 2021, Hartford acknowledged coverage for business income and lost inventory and asked that Evans

send banking information for the purpose of wiring money to BluWater. But when no money came, Evans in November reminded Brichetto of the previously sent documents and requested confirmation for business income and property loss. No response was received other than the December 22 letter denying coverage of the electrical panel. BluWater argues it had to hire its own expert to calculate economic damages incurred by BluWater.

In response to BluWater's motion, Hartford submitted a declaration from its expert in general claim handling issues. That expert concluded that the insurance industry standard for explaining the pertinent coverages is to give an overview of the coverage, type of benefits, and the claim process the insured can expect to receive. The expert explained that Hartford's first adjuster Penner complied with industry standards for providing an explanation of pertinent coverages. Because it is a disputed fact whether Hartford violated WAC 284-30-350(1) by failing to explain coverage provided by the business income loss provision, the trial court erred in ruling in favor of BluWater as a matter of law.

It is undisputed that BluWater did not receive any payments for its undisputed business personal property losses until after it instigated legal action.[16] But the issue before us in this discretionary review is restricted to the specific claims asserted in the two challenged summary judgment orders. BluWater asserts on appeal that Hartford violated WAC 284-3-330(4) because it did not question significant portions of the claim

---

[16] At the hearing on the second summary judgment ruling, Hartford conceded that it got the claim for inventory and lost food items wrong, but that the $92,400 had been paid. In explaining why Hartford still may not have received the $92,400 payment, Hartford noted that at a recent mediation it became aware that there may have been a typo in the address for BluWater's counsel.

that included lost property, food, inventory and related expenses, but nevertheless failed to pay it. However, BluWater asserted a violation of WAC 284-30-330(4) in its first motion for partial summary judgment that centered around coverage of the electrical panel, not damages of the undisputed lost property and inventory.

In its second motion for partial summary judgment, BluWater did request damages for lost property and inventory and requested the court find violations of three claims-handling regulations. But WAC 284-30-330(4) was not one of the three WACs asserted in that motion. Similarly, BluWater argues on appeal that WAC 284-30-330(7) prohibits "compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." But violation of WAC 284-30-330(7) was asserted in the first summary judgment motion centered around the electrical panel and violation of that WAC was not asserted in BluWater's second summary judgment motion related to damages of lost property and inventory.

Trial has yet to be held in this matter. The only issues before us are the matters that were presented to the trial judge related to the two summary judgment orders and the order compelling discovery and imposing sanctions.

<u>Attorney Fees and Costs</u>

BluWater also moved for attorney fees and investigative expenses in its second motion for partial summary judgment. BluWater argued that because of Hartford's lack of response to defend BluWater against the landlord's claim, it had to engage in experts that Hartford should have provided. The trial court awarded costs and fees as

consequential damages under the ABC rule, the CPA and Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991).

Hartford does not dispute that it is liable for the costs and fees related to BluWater having to defend against the landlord, but argues that the submitted invoices relate to BluWater's first-party claims and not the third-party claims. BluWater argues that any distinction in fees and costs related to defending against the landlord or litigating against Hartford as a first-party claimant is warrantless because BluWater may seek costs and fees for both.

"'An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue.'" McGreevy v. Oregon Mut. Ins. Co., 128 Wn.2d 26, 28, 904 P.2d 731 (1995) (quoting Olympic S.S., 117 Wn.2d at 54)). Where the duty to defend is at issue, an insured has the right "to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured." Olympic S.S., 117 Wn.2d at 52.

Also, an insured party has the right to recover its attorney fees when an insurer "refuses to defend or pay the justified action or claim of the insured." Id. Under Olympic Steamship, an award of attorney fees is authorized where the claims are for coverage, rather than for the value of the claim. Woo, 150 Wn. App. at 175-76. Coverage disputes include issues regarding the "application of an insurance policy," and the "scope" or "extent of the benefit" in an insurance contract. Colorado Structures, Inc. v. Ins. Co. of the W., 161 Wn.2d 577, 606, 167 P.3d 1125 (2007); Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 147, 930 P.2d 288 (1997). Where coverage

is at issue, all that is necessary to recover fees under Olympic Steamship, is that the "insurer compels the insured to assume the burden of legal action to obtain the full benefit of the insurance contract." Leingang, 131 Wn.2d at 148-49.

BluWater maintains that segregation of attorney fees is not required because Hartford denied coverage for the electrical panel as a first-party claim. However, we reversed summary judgment as to that claim. Thus, the question remains as to whether BluWater's attorney fees and costs can be segregated between fees associated with defending the landlord's claims and those litigating its first-party claims against Hartford if it turns out that the electrical panel does not meet the requirements of the tenant improvement and betterments provision.

Where attorney fees are recoverable for some of a party's claims, the award must segregate the time spent on issues for which fees are authorized from time spent on other issues. Mayer v. City of Seattle, 102 Wn. App. 66, 79-80, 10 P.3d 408 (2000). Segregation is required even if the claims overlap or are interrelated. Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 690, 82 P.3d 1199 (2004). However, if "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees." Hume v. Am. Disposal Co., 124 Wn.2d 656, 673, 880 P.2d 988 (1994).

BluWater maintains that it had submitted a reimbursement request to Hartford relating to legal fees, stating it was "impossible to segregate any of the services or expert fees." But that was under the court's prior ruling that the electrical panel was covered under the policy as a first-party claim, which may be why the court did not

address the issue of segregating attorney fees.

Because a genuine issue of material fact remains as to the coverage status of the electrical panel and fans and ducts, it has yet to be determined if the costs and attorney fees should or could be segregated. Accordingly, we reverse the court's summary judgment award of costs and attorney fees.[17] [18]

### Discovery Violation and Sanctions

Discovery was heavily contested leading to multiple discovery orders. BluWater moved to compel depositions arguing that Hartford had been unnecessarily delaying discovery by refusing to provide firm dates on which BluWater could take depositions of Hartford employees. On May 27 the trial court ordered Hartford to provide dates that BluWater would be able to depose Hartford employees, and overruled Hartford's objections to the categories of questions posed by BluWater. The court noted that BluWater had already agreed to a stipulated protective order that protects confidential materials. On June 13, the court entered the agreed stipulation and protective order. On June 24, BluWater served an amended CR 30(b)(6) notice to Hartford designating 28 topics for deposition. The court, following a status conference on July 25, ordered on July 28 that the CR 30(b)(6) deposition of Hartford shall occur on September 23. As the court observed, these

---

[17] Because we reverse the award of attorney fees and costs, we need not address Hartford's arguments challenging the trial court's application of authority supporting attorney fees.

[18] Hartford also suggests that the approximately $172,000 it already paid to BluWater's counsel should have been excised from the trial court's judgment. Hartford did not pay that sum until after court's October 28 ruling. The only information before the court prior to its ruling on October 28 was that Hartford acknowledged that it owed nearly $172,000 in fees related to the liability claim and that it intended to pay it. The lower court's entry of judgment is not part of this appeal.

deposition topics were developed in consultation with Elliott Flood, BluWater's insurance expert, to get information relevant to Hartford's policies that impact its compliance with Washington insurance law. These policies are directly relevant to BluWater's claims in this case arising out of the Washington Consumer Protection Act, RCW 19.86, and the Insurance Fair Claims Act, RCW 48.30.

On September 16, Hartford designated either Derek Cole or Ryan Brichetto to address the first 20 topics and indicated it would not make any designation for topics 21 through 28.

Following the subsequent depositions, BluWater filed a motion to compel and for sanctions. The motion included a chart by topic of how Hartford failed to appear by either failing to produce any witness or producing witnesses that did not prepare for the topic and therefore had no knowledge. The trial court granted BluWater's motion on October 28. The court ruled that "[Hartford] unilaterally announced it would not produce a witness on deposition topics 21 through 27" without seeking a protection order[19] from the court and produced only "two low-level employees" for the CR 30(b)(6) depositions noted by BluWater and that those employees had "done almost no preparation."

Hartford appeals the October 28 order, but none of the previous discovery orders by the trial court.

We review sanctions for noncompliance with discovery orders for an abuse of discretion. Rivers v. Wash. State Conf. of Mason Contractors, 145 Wn.2d 674, 684, 41 P.3d 1175 (2002) (citing Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)). "[D]iscretionary determination should not be disturbed on appeal except

---

[19] During oral argument Hartford suggested that it did seek a protection order as to these topics. Wash. Ct. of Appeals oral arg., *supra*, at 12 min., 40 sec. to 13 min., 11 sec. However, it was about a week *after* the court entered its October 28 order that Hartford sought a protective order requesting the court grant its request to not allow the deposition of six individuals. The court granted Hartford's motion in part and denied it in part.

on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." Id. at 684-85 (quoting Burnet, 131 Wn.2d at 494). A ruling based on an error of law is an abuse of discretion. Casper v. Esteb Enterprises, Inc., 119 Wn. App. 759, 768, 82 P.3d 1223 (2004) (citing King v. Olympic Pipeline Co., 104 Wn. App. 338, 355, 16 P.3d 45 (2000)).

A notice of deposition made by a party under CR 30(b)(6) requires the corporation to produce one or more officers to testify with respect to matters set out in the deposition notice. Flower v. T.R.A. Indus., Inc., 127 Wn. App. 13, 39, 111 P.3d 1192 (2005). Because CR 30(b)(6) and Fed. R. Civ. P. 30(b)(6) are nearly identical, "federal cases interpreting the federal rule are highly persuasive." Casper, 119 Wn. App. at 767. The party seeking discovery need only "designate with reasonable particularity the matters on which examination is requested." CR 30(b)(6). Upon such a request, the corporation "must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Flower, 127 Wn. App. at 39 (quoting Marker v. Union Fid. Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989)).

Hartford first argues that the court erred in ruling that Hartford had violated discovery rule CR 30(b)(6). It rests its entire argument on one sentence: "A review of BluWater's CR 30(b)(6) notice indicates its incredible breadth." Hartford cites generally to BluWater's notice of all 28 topics and does not provide any specificity as to how BluWater failed to designate with reasonable particularity the matters on which examination was requested. We conclude that Hartford has waived any assignment of

error related to its claim that BluWater's CR 30(b)(6) notice was too broad. RAP 10.3(a)(6) (requiring appellant's brief to include "argument in support of the issues presented for review"); see also Smith v. King, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986) (assignment of error is waived if unsupported by argument or authority).

BluWater requested a sanction of finding Hartford in default, or in the alternative a sanction of $500,000. Finding a party in default is one of the "harsher remedies" under CR 37(b) and requires the court to consider the Burnet factors. Casper, 119 Wn. App. at 768-69 (quoting Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)).

The court evaluated the Burnet factors and declined to grant BluWater's requested "harsher" sanctions. The court, nevertheless agreed that sanctions were warranted under CR 37 for Hartford's failure to appear by failing to produce an adequately prepared designee in Cole and failing to designate any person to appear on seven identified discovery topics. The trial court explained its concern that a mere imposition of attorney fees awarded to BluWater for the expenditure required to litigate these discovery matters would not adequately punish the behavior because Hartford was "constantly seeking ways to delay and frustrate the discovery process in the hopes that BluWater will eventually give up or, at least any payment to BluWater is delayed for as long as possible."

In this case, the trial court imposed the following sanctions:

(1) Hartford must provide for deposition a properly prepared, upper-executive level CR 30(b)(6) witness on each of the topics on BluWater's list within 45 days of this order.

(2) Hartford shall, within 20 days, place $50,000 in [BluWater's attorney]'s trust account;

37

(3) [BluWater's attorney] and his firm will bill Hartford monthly for his time working on the discovery issues in this case. He may redact entries that might describe attorney-client conferences to simply state: attorney-client conference.

(4) Upon sending a monthly billing to Hartford, [BluWater's attorney] may withdraw the amount of the billing from his trust account to pay his bill.

(5) Whenever the balance in his trust account falls below $30,000, [BluWater's attorney] may send a demand to Hartford to replenish the amount in his trust account. Hartford shall do so within 10 days.

(6) Failure to Hartford to comply with (1) through (4) above will be a breach of this Court's order. Upon [BluWater's attorney]'s sworn statement that the Order has been breached, this Court will enter a default judgment against Hartford and in favor of BluWater in this case.

(7) If the Court of Appeals takes discretionary review of this Order and affirms the Order, it should consider awarding BluWater its attorneys [sic] fees on appeal.

First, Hartford takes issue with the court ordering that Hartford provide an "upper executive level" CR 30(b)(6) witness on each of BluWater's topics. Hartford argues that "CR 30(b)(6) notice of deposition does not entitle a party to dictate *whom* the corporation designates." However, the court did not dictate whom Hartford designates, it merely designated that Hartford provide an "upper-executive level" witness after Hartford designated a lower-level representative who did not have the knowledge or attempted to obtain the information requested. Hartford cites no authority to support its argument that the court did not have the authority to require the designation of an upper-level executive under these circumstances. In fact, CR 37(a)(2) provides that when a deponent fails to answer a question propounded or submitted under rule 30 or a corporation fails to make a designation under 30(b)(6), a party may move for an order "compelling an answer or designation." Although it may have been preferable for the

38

court to order Hartford to instead designate a witness qualified to answer the topics propounded by BluWater, it was not an abuse of discretion for the court to instead require them to designate an "upper level executive."

The Washington Supreme Court recently declined to adopt the apex doctrine, which requires the party seeking to depose a high-level witness to show both that the witness has unique, nonrepetitive, firsthand knowledge of the facts and that the party has exhausted less intrusive means, such as interrogatories and depositions of other employees. Stratford v. Umpqua Bank, 2 Wn. 3d 112, 125, 534 P.3d 1195 (2023). Adopting such a doctrine would be inconsistent with our state's Civil Rules, which "already protect potential deponents—including high-level officers—from unduly burdensome discovery." Id. at 124-27 (citing CR 26). In fact, after the court's October 28 order, Hartford successfully challenged, in part, BluWater's request to depose six specific individuals.

Next, Hartford challenges the court's sanctions that, in essence, acquiesced the court's sanction authority to BluWater's counsel. CR 37(b)(2) provides that the court

> shall require the party failing to obey the order or the attorney advising him or her or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

However, the sanction imposed by the trial court goes beyond imposing reasonable attorney fees caused by the failure. Instead, the court ordered Hartford to timely maintain a litigation fund in a trust account at the disposal of BluWater's counsel without limitation. Though BluWater's attorney was required to send monthly billing to Hartford in order to withdraw the amount from the trust account to pay his bill, whenever the balance in the trust account fell below $30,000, BluWater's counsel could send a

demand to Hartford to replenish and Hartford was required to do so within 10 days. Because the billing was allowed for work on "discovery issues" without restrictions, the court created a sanction of which the outer limits, if any, were controlled by BluWater's attorney, not the court. The trial court neither limited the fees to those that were reasonable nor those caused by the failure to comply with the court's discovery orders.

Moreover, the attorney who was the recipient of the fees would be the one billing his opposing party who was directly under the threat of default judgment for failing to comply as ordered. Notably, the court pre-determined that a default judgment "will enter" based simply on a sworn statement from BluWater's attorney that Hartford failed to comply with (1) through (4).[20] However, because a default judgment for discovery violations raises due process concerns, the court must first find willfulness and substantial prejudice before entering a default judgment. Smith v. Behr Process Corp., 113 Wn. App. 306, 325, 54 P.3d 665 (2002). And the court must make Burnet findings on the record when imposing the harsher remedies under CR 37 such as entering a default judgment.[21] See Rivers, 145 Wn.2d at 694. Here, the trial court's order committed itself to enter a default judgment based only on the sworn assertion that Hartford did not comply with the court's order regardless if the noncompliance was

---

[20] The order does not explain if Hartford is subject to this sanction for the violation of any of provisions (1) through (4), or if it must violate all four in order to face the sanction of default judgment.

[21] When a trial court imposes one of the "harsher remedies" under CR 37(b), "it must be apparent from the record that the trial court explicitly considered" what are considered the Burnet factors: whether (1) a lesser sanction would probably have sufficed and (2) whether the court found that the party's refusal to obey a discovery order was willful or deliberate and substantially prejudiced the opponent's ability to prepare for trial. Casper, 119 Wn. App. at 768-69 (quoting Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)). A violation of the discovery rules is willful if done without reasonable excuse. Id. at 769 (citing Smith v. Behr Process Corp., 113 Wn. App. 306, 327, 54 P.3d 665 (2002)).

willful or created a substantial prejudice.

It is the court, not opposing counsel, who may impose sanctions that are just in regards to failure to comply with discovery orders. CR 37. While this court continues to encourage trial courts to use their discretion in crafting appropriate sanctions, the discretion in deciding whether an order has been violated and whether a sanction should be imposed, must remain in the hands of the trial court. For these reasons, we hold that the trial court abused its discretion in imposing sanctions three through six against Hartford and reverse these sanctions.

CONCLUSION

We reverse the trial court's ruling that the insurance policy covers the electrical panel and the relevant fans and ducts as a matter of law. We affirm the trial court awarding BluWater $64,635 in damages for business income loss. We reverse the trial court's summary judgment award of $9,371.25 in damages for the fans and ducts. We affirm the trial court's finding that Hartford acted in bad faith by failing to investigate the landlord's claims against BluWater. To the extent the court's bad faith finding is based on Hartford's denial of BluWater's first-party claim for the electrical panel, that finding is reversed. We affirm the trial court's June 27 summary judgment order that Hartford violated the CPA based on two unchallenged claims-handling regulations. We reverse the trial court's October 28 summary judgment order that Hartford violated three claims-handling regulations. Because, at this stage, genuine issues of material fact remain as to whether the insurance policy covers BluWater's first-party electrical panel claim, the question of whether the attorney fees and costs should and could be segregated also is unresolved. Accordingly, we reverse the trial court's October 28 order awarding

BluWater attorney fees and costs. We affirm the trial court's ruling that Hartford violated CR 30(b)(6). We affirm the first and second sanctions imposed under CR 37(b)(2), but reverse sanctions three through six.

We affirm in part, reverse in part and remand.[22] [23]

_____
Coburn, J.

WE CONCUR:

_____                    _____
Brennan, J                                          Mann, J.

---

[22] Because Hartford does not present argument regarding whether the trial court erred in denying its motion for reconsideration, we do not address that issue. "We will not consider an inadequately briefed argument." Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

[23] BluWater requests attorney fees on appeal in accordance with RAP 18.1(b). Because both parties prevailed as to substantive issues on appeal, we deny BluWater's request for attorney fees without addressing the basis of such requests.